■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR PAGAN, Appellant. [622 NYS2d 9] —Judgment, Supreme Court, Bronx County (George Covington, J.), rendered March 4, 1993, convicting defendant, after a jury trial, of attempted sodomy in the first degree, seven counts of sexual abuse in the first degree and six counts of endangering the welfare of a child and sentencing him thereupon to consecutive indeterminate terms of imprisonment of from five to fifteen years on the attempted sodomy conviction and from two and one-third to seven years on two of the sexual abuse counts and also sentencing him to concurrent indeterminate terms of imprisonment of from two and one-third to seven years on the remaining sexual abuse counts and to a definite term of one year for each of the endangering the welfare of a child counts, said terms to run concurrently with the sentence imposed on the attempted sodomy conviction, for a total sentence of from nine and two-thirds to twenty-nine years, unanimously reversed, on the law, and the matter remanded for a new trial on all counts except count eight, which is dismissed.

Although the proof of guilt against the fifty-nine year-old defendant, the eight-year old complaining witness's step-grandfather, was sufficient to establish his guilt of all remain-

ing counts of the indictment for his conduct over an almost four-month span with respect to the complaining witness and her two-year old sister, the trial court, in our view, committed reversible error in two respects. It refused to permit defense counsel to inquire fully into the circumstances under which defendant made incriminating statements to his son, the complaining witness's stepfather, and to charge the jury on the issue of the voluntariness of those statements. After the last of the incidents, as to which the complaining witness testified that defendant was "pushing [her] head down * * * [to h]is penis", the complaining witness told her mother that defendant had "been touching me in my private." Later, in the presence of her mother, she also told her stepfather what defendant had been doing. The stepfather, "in a state of shock" spent the night driving around with a friend. In the morning he confronted his father, the defendant, who told him "that it wasn't his fault, that my daughter was all over him." One month later, at his uncle's house, the stepfather spoke again with defendant, who told him that "he doesn't know how he could have done something like that because he told me he was possessed by the devil." Defendant also told his son at that time "to take care of your daughter. * * * [S]he is like a slut and a real horny little girl".

As to the first of these conversations, the trial court sustained the People's objections to counsel's inquiry as to whether the stepfather, who admittedly had a drug background, had ingested drugs at or around the time he confronted defendant and whether he spoke to his father in a loud and aggressive manner. As to the second conversation, the court sustained the prosecutor's objection to counsel's question as to whether the stepfather had demanded that defendant plead guilty. The court similarly curtailed defendant's testimony concerning the circumstances surrounding the two statements. As to the first, the court sustained objections to defendant's testimony that the stepfather appeared "drugged up", to questions about the stepfather's appearance and the manner in which he was speaking to defendant, to defendant's testimony that the stepfather "was out of what is normal" and even as to whether defendant had made the statement. As to the second statement, the court sustained an objection to counsel's question as to the manner in which the stepfather spoke to defendant.

The demeanor of the person to whom an incriminatory statement is alleged to have been made is relevant to both the voluntariness and reliability of the statement. It is of no

moment that the person to whom the statement is made is not a police officer since a statement may be involuntary even if made to a private individual. *(See, People v Grillo,* 176 AD2d 346; CPL 60.45 [2] [a].)* Whether the stepfather was under the influence of drugs during his first encounter with defendant was probative as to his demeanor, as was defendant's awareness, if such be the case, that the stepfather was under the influence of drugs. Such an awareness would be relevant on the issue of whether defendant felt fearful or threatened. The good faith basis for such inquiry was established. Nor did defendant's alleged expressed disclaimer, "I was not guilty", during the second encounter justify the exclusion of testimony as to the manner in which the stepfather spoke to defendant. If the jury believed that the second statement was made, it should have been allowed to consider whether the statement was the product of coercion. *(People v Hardy,* 124 AD2d 676.) In addition to his pre-trial *Huntley* rights, a defendant has the "traditional prerogative" to contest an incriminating statement's *"reliability* during the course of the trial" *(Crane v Kentucky,* 476 US 683, 688 [emphasis in original], citing *Jackson v Denno,* 378 US 368, 386, n 13). That right is embodied in CPL 710.70 (3).

It should be noted that, aside from the two statements, the only evidence directly implicating defendant was the complaining witness's testimony. On this record, we cannot conclude that the court's rulings precluding defendant from inquiring fully into the circumstances of his statements, which undoubtedly, played a significant part in the jury's determination, were harmless beyond a reasonable doubt.

The court also erred in refusing to charge the jury to disregard defendant's statements if it determined that they were involuntarily made. Notwithstanding the rulings complained of, the record contains sufficient evidence to create a factual dispute as to their voluntariness. As defendant testified, referring to the first encounter with his son after the complaining witness first reported his actions, "I was even afraid that—we were very afraid because he was out of what is normal."

As conceded by the People, count eight of the indictment charging him with sexual abuse in the first degree should be dismissed for insufficiency of proof. Concur—Murphy, P. J., Sullivan, Wallach, Nardelli and Tom, JJ.