■ In the Matter of Cy R., a Person Alleged to be a Juvenile Delinquent, Appellant. [841 NYS2d 25]—

Order of disposition, Family Court, Bronx County (Alma Cordova, J.), entered on or about October 11, 2006, which adjudicated appellant a juvenile delinquent upon his admission that he committed an act which, if committed by an adult, would constitute the crime of criminal possession of stolen property in the fourth degree, and placed him with the Office of Children and Family Services in a limited secure facility for a period of 18 months, affirmed, without costs.

On August 3, 2006, the complainant, a retired New York City detective, discovered that four handguns and some 1,000 rounds of ammunition were missing from his apartment on Commonwealth Avenue in Bronx County. Sergeant Yalcin Kiyar responded to the report of the burglary and was immediately informed by the complainant of his suspicion that appellant, his cousin, had taken the weapons. While being driven around the neighborhood by the sergeant, the complainant spotted appellant walking along the sidewalk.

The complainant approached appellant, threw him up against a fence and demanded to know the location of his guns. After much yelling, cursing and threatening on the complainant's part, appellant stated that his involvement in the theft was in secreting the weapons. Even after appellant was taken into custody and placed in Sergeant Kiyar's vehicle, the complainant continued to berate him, demanding to know the whereabouts of the handguns. Appellant agreed to lead the men to the hiding place, where two of the weapons were recovered.

In denying appellant's motion to suppress his statements and the recovered guns, Family Court ruled that the statements "were voluntarily made," finding that the complainant, despite his law-enforcement background, "had acted in a purely private capacity, not as an agent of the State."

There is no evidence suggesting that the complainant was in contact with the police at any time prior to his call to report the theft of his firearms; nor is there any indication that police communicated with, or directed, him concerning how to approach appellant. Rather, it is apparent that it was the complainant who identified appellant to Sergeant Kiyar and who berated his cousin while the sergeant merely looked on. At issue is whether appellant revealed the location of the weapons to the complainant as a result of "the use or threatened use of physical force" so as to render his statement involuntary (Family Ct Act § 344.2 [2] [a]).

It should be noted that Family Court Act § 344.2 (2) (a) is virtually identical to CPL 60.45 (2) (a). While a statement may be involuntary, and thus excludable, even if made to a private person (CPL 60.45 [2] [a]; *People v Grillo*, 176 AD2d 346, 347 [1991]), voluntariness is a question of fact (*People v Pagan*, 211 AD2d 532, 533 [1995], *lv denied* 85 NY2d 978 [1995]); thus, "much weight must be accorded the determination of the suppression court with its peculiar advantages of having seen and heard the witnesses" (*People v Prochilo*, 41 NY2d 759, 761 [1977]). A statement is voluntary even in the face of duress if the "[defendant's] will has [not] been overborne and his capacity for self-determination critically impaired" (*Culombe v Connecticut*, 367 US 568, 602 [1961]; *see also People v Williams*, 180 AD2d 423, 424 [1992], *lv denied* 79 NY2d 954 [1992]).

We cannot agree with the dissenter's view that the use of minor force and threatening language renders a suspect's statement involuntary as a matter of law. Particularly as to statements made to a relative, a distinction must be drawn between a true threat of violence and mere hyperbole, as reflected by such common remarks as, "I'll kill you," or "I'll break your neck [face, legs]." The crucial inquiry is whether the defendant was intimidated into making an inculpatory statement or simply regarded the purported threat as so much rhetoric.

The complainant, while confronting appellant, was cursing and yelling at him, reflecting his concern as to the whereabouts of the stolen weapons. He testified that Sergeant Kiyar helped him apprehend appellant and sat him in the car. After being placed in the police car, while the complainant continued to yell and curse at him, appellant stated, "Relax, I'll tell you where they are."

Sergeant Kiyar testified that the complainant was "very angry," and held appellant by his upper forearm but did not shake him. Sergeant Kiyar further testified that appellant acknowledged "his own involvement in the taking of the weapons was to help conceal them. That he was not involved in the initial theft." Appellant admitted, "I took them into the woods and I hid them in the wooded area in the woods over there by a rock." At that time, appellant was placed under arrest, handcuffed and put into the police car, but no *Miranda* warnings were administered. Guided by appellant, the sergeant retrieved two handguns wrapped in a towel. The other two weapons were never recovered.

The testimony of the witnesses was not contradictory, as urged by the dissent. The complainant testified that Sergeant Kiyar was helping him to apprehend appellant: "I had, you know, one arm, he had the other arm. Sat him in the car." This portion of the complainant's testimony clearly refers to Sergeant Kiyar holding appellant's arm as he was being placed in the police vehicle after his arrest. Sergeant Kiyar stated that appellant's arrest was effected after he admitted his role in hiding the handguns. The record supports the conclusion that appellant first admitted his involvement in the theft, precipitating his arrest, and only later, after he was in custody and seated in the police car, agreed to lead the sergeant to the hiding place in the wooded area.

Similarly, Sergeant Kiyar's statement that appellant was not free to leave and go about his business, when examined in the context in which it was made, does not render the interrogation leading up to appellant's arrest custodial, as suggested by the dissenter. On cross-examination, the sergeant was describing how the complainant was holding appellant by the arm when counsel asked, "And while he was doing this, was Cy free to leave?" The sergeant responded, "No, he wasn't free to leave." It would appear that the witness was simply stating the obvious—that appellant was not then free to go because he was being restrained by the complainant. There was no evidence to show that appellant was restrained, in any manner, by Sergeant Kiyar before his arrest. Furthermore, whether the statement might be taken to mean that appellant was under any official restriction imposed upon his freedom by the sergeant merely presents a question of fact, and this Court must defer to the suppression court's findings.

Whether appellant's agreement to disclose the location of the weapons was voluntary likewise presents a question of fact. At this time, he was in custody in Sergeant Kiyar's police vehicle,

and the complainant was standing outside the car demanding to know where the weapons were hidden. We find no basis in the record to disturb the suppression court's conclusion that at the time appellant calmly "made the statement, 'Relax, I'll tell you where the guns are,' he was not instilled with such fear and insecurity that he was induced or compelled to make that statement."

Finally, the lack of *Miranda* warnings does not require suppression of either the weapons or appellant's statements leading to their recovery. Sergeant Kiyar's questions were directed at locating the stolen weapons, one of which was loaded, and his inquiry falls within the public safety exception to *Miranda* (*New York v Quarles*, 467 US 649 [1984]). This matter raises the same concerns this Court identified in *People v Oquendo* (252 AD2d 312, 315 [1999], *lv denied* 93 NY2d 901 [1999]), "namely a missing (possibly loaded) gun, which was left in a publicly accessible place but could not be found readily without the suspect's cooperation." That the gun was hidden does not obviate public safety concerns (*Quarles*, 467 US at 652 [gun secreted in supermarket carton]); nor does any "subjective motivation of the arresting officer" to obtain incriminating evidence (*id.* at 656). Concur—Tom, J.P., Sullivan, Williams and Gonzalez, JJ.

Andrias, J., dissents in a memorandum as follows: Because the 15-year-old appellant's admission that he committed an act which, if committed by an adult, would constitute the crime of criminal possession of handguns stolen from his cousin was obtained "by the use or threatened use of physical force upon the respondent," in violation of Family Court Act § 344.2 (2) (a), I dissent and would reverse and dismiss the petition.

The evidence at the suppression hearing established that at approximately 11:55 P.M. on August 3, 2006, New York City Police Sergeant Kiyar responded to a radio transmission of a burglary at a residence on Commonwealth Avenue in the Bronx. When Kiyar arrived at the location, he was told by John Cuebas, a retired police detective, that four guns and "close to one thousand rounds of ammunition" had been taken from his bedroom, and he believed that appellant, his cousin, was the thief. Mr. Cuebas and Sergeant Kiyar then drove around the neighborhood looking for appellant. Four or five blocks away Cuebas pointed out appellant, who was walking on the sidewalk, at which point both men got out of the patrol car and approached appellant.

Mr. Cuebas grabbed appellant, threw him up against the fence and said "where the f— are my guns, Cy. I know you have them. Where the f— are my guns?" According to Sergeant Kiyar, he

was standing behind Cuebas, merely observing; but Cuebas testified that the sergeant was helping him apprehend appellant ("I had, you know, one arm, he had the other arm"). In any event, Sergeant Kiyar, while stating on direct examination that appellant was not in custody at the time, admitted on cross-examination that appellant "was not free to leave." Cuebas admitted, "I called him a piece of s—. A thief. A thief—I could have said more but I was so angry I just don't remember at the time, but I am pretty sure I said a lot more than that." He also testified that at the point he threw appellant up against the fence and was yelling, cursing and threatening him ("Things like I'll break your jaw") appellant did not tell him where the guns were. It was only *after* appellant had been put in handcuffs and was sitting in the patrol car, while Cuebas continued to curse and threaten him, that appellant said "[r]elax, I'll tell you where they are." According to Sergeant Kiyar, when Cuebas first grabbed him, appellant "was upset . . . initially he was denying where the weapons were," but after Cuebas, who was angry and shouting, demanded a second time to know where they were, appellant "made a statement that he only hid the weapons. He was not involved in the initial theft of the weapons." At that point, the sergeant testified, "I placed Cy [R.] under arrest because of the admission he made to Mr. Cuebas."

The suppression court credited Sergeant Kiyar's testimony and did not believe that he was holding appellant. It also found that the statements made to Mr. Cuebas were voluntarily made, stating, in pertinent part, that "after viewing the totality of the circumstances, Respondent's statements had not been psychologically or physically coerced such that it undermined his ability to make a choice whether or not to make a statement. The complainant grabbed Respondent's arm, pushed him against a fence, yelled, screamed, made verbal threats and used obscenities. At no time, did complainant strike, hit or injure Respondent. Respondent's reaction and demeanor to complainant's words was very telling. He said, 'Relax, I'll tell you where the guns are.' There was no testimony that Respondent was crying or shaking or in fear." The court further found that "when Respondent made the statement, 'Relax, I'll tell you where the guns are,' he was not instilled with such fear and insecurity that he was induced or compelled to make that statement."

While the testimony of the only witnesses was contradictory on the issue, the suppression court did not believe that Sergeant Kiyar was holding appellant. Nevertheless, it is uncontroverted that Sergeant Kiyar conceded appellant was not free to leave. Whether or not appellant was being held by the sergeant as Mr.

Cuebas held and threatened him with serious bodily injury, Sergeant Kiyar, who had 16 years of law enforcement experience, believed appellant was in custody. Clearly then, a reasonable 15 year old may be found to have similarly perceived the circumstances (*see Matter of Vincent R.*, 14 Misc 3d 760, 763 [2006]). The fact that Mr. Cuebas might not have been "a public servant engaged in law enforcement activity" or one acting under the direction of or in cooperation with such a person (Family Ct Act § 344.2 [2] [b]) is clearly not dispositive, since section 344.2 (2) (a) provides that a statement is involuntarily made if obtained by "*any* person by the use or threatened use of physical force upon the respondent" (emphasis added; *see Matter of Brian E.*, 206 AD2d 665, 666 [1994], *lv denied* 85 NY2d 805 [1995]). Thus, inasmuch as the only statements that formed the basis for appellant's arrest were obtained from him by "any person [Mr. Cuebas] by the use or threatened use of physical force," they were "involuntarily made" as a matter of law.

Moreover, to the extent the court further found that "when Respondent made the statement, 'Relax, I'll tell you where the guns are,' he was not instilled with such fear and insecurity that he was induced or compelled to make that statement," the hearing record unequivocally establishes that appellant was already under arrest and was sitting in the patrol car in handcuffs. The court also found that *Miranda* warnings were not given to appellant on the night of his arrest.

Finally, since appellant's subsequent statement as to where he hid the guns and the recovery of the weapons were the fruits of the illegally obtained statements and an unlawful arrest, his motion to suppress should have been granted in its entirety. Since there was no other legal or properly obtained evidence introduced against him (*see People v Fitzgerald*, 244 NY 307, 312 [1927]), the petition should be dismissed.